IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

MILDRED ANN PELFREY,

      Plaintiff,

v.                                       **CASE NO. 2:11-cv-00222**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the court on briefs (ECF Nos. 16-18). Both parties have consented in writing to a decision by the United States Magistrate Judge (ECF Nos. 10, 13).

Plaintiff, Mildred Ann Pelfrey (hereinafter referred to as "Claimant"), has filed several applications for DIB; the instant application was filed on May 31, 2002, alleging disability as of December 31, 2001. (Tr. at 91-93.) Her date last insured was December 31, 2002 (tr. at 95); thus the court must evaluate the evidence with respect to one year, ten years ago. The claim was denied initially and upon reconsideration. (Tr. at 66-69, 73-74.) On December 26, 2002, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 75.) The first hearing was held on June 2, 2003, before the Honorable Harry C. Taylor, II. (Tr. at 387-412.) By decision dated June 27, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-22.) The ALJ's decision became the

final decision of the Commissioner on September 3, 2003, when the Appeals Council denied Claimant's request for review.  (Tr. at 4-5.)

Claimant filed an action seeking judicial review in this court, resulting in an Order entered March 15, 2005, remanding the case to the Commissioner.  (Tr. at 487-488.)  On remand, ALJ Taylor conducted a second hearing on August 15, 2005.  (Tr. at 529-68.)  By decision dated November 2, 2005, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 429-39.)  The ALJ's decision became the final decision of the Commission on November 17, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 413-15.)  On April 5, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).  Claimant attributes the long delay between Appeals Council action and the filing of the complaint to the Appeals Council's failure to mail the decision to Claimant or counsel.  (ECF No. 16, at 2 n.1.)  The Commissioner does not dispute the point.

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2006).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether

claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2006).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because although she performed some babysitting services, she did not engage in substantial gainful activity during 2002.  (Tr. at 431, 437, 533.)  Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of post-traumatic arthritis of the left ankle, and degenerative arthritis of the spine.  (Tr. at 437.)  At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 437.)  The ALJ then found that Claimant had

a residual functional capacity for sedentary work, limited to standing and/or walking two to four hours of an eight-hour day. (Tr. at 438.) As a result, Claimant cannot return to her past relevant work. Id. Nevertheless, the ALJ concluded that Claimant could perform jobs such as bookkeeper and receptionist, which jobs exist in significant numbers in the national economy. Id. On this basis, benefits were denied.

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born in 1957; in 2002, she was 45 years old. (Tr. at 88.) Claimant

obtained a GED and attended some college. (Tr. at 532-33.)  In the past, she worked in Veterans Services.  (Tr. at 534.)

The Medical Record

The medical record for only 2002 is scant; the court has reviewed consultative evaluations from 1999, and medical records from 2000 through 2004, in an effort to obtain a better picture of the state of Claimant's physical and mental health in 2002.  As background, Claimant was in several automobile accidents during the 1990s, resulting in significant ankle injuries.

Physical Health

On May 18, 1999, Claimant underwent a consultative evaluation by Arturo Sabio, M.D.  His impressions were: posttraumatic arthritis, left ankle, and degenerative arthritis of the spine.  (Tr. at 288.)  He summarized his examination as follows:

> This 42-year-old female complains of low back pains, pain between the shoulders, and pain in the left leg.  She had a previous injury to the left leg in 1995 when she had three car wrecks.  She had an open reduction and internal fixation of the lower left leg.  During this examination, there was tenderness and scars on both sides of the left ankle and lower third of the left leg.  The hardware is palpable through the skin, but there was no skin breakdown.  The patient had a stiff left ankle, which permitted 0 degrees of dorsiflexion and only 5 degrees of plantar extension.  The rest of the joints of the upper and lower extremities have normal ranges of motion.  The patient walked with an antalgic gait, but she did not require any ambulatory aids.  She is stable at station.  The patient was not able to walk on the heels, on the toes, or heel-to-toe in tandem because of the pain in the left ankle and the stiffness.  She is not able to squat and she is not able to stand on either leg because of the pain in the left ankle.  There was no muscle atrophy or weakness.  The reflexes were normal.  The motor strength and sensory functions were normal.  The patient was able to write, pick up coins, and button her clothes without any problems.

(Tr. at 288-89.)

On May 6, 2002, notes from Guyan Valley Hospital indicate that Claimant fell in her

5

yard on May 2. She complained of pain between her shoulder blades, lower back, and right hip. (Tr. at 333.) The rest of the notes are illegible. (Tr. at 333-35.)

On June 5, 2002, podiatrist Steve Melek wrote that Claimant presented with capsulitis, leg length discrepancy lower left leg due to trauma in 95, uneven spinal tilt, ankle pain lateral/dorsal left foot, and previous history of back pain and knee pain. (Tr. at 336.) He recommended that she be casted for functional orthoses. Id.

Dr. Melek referred Claimant to Dr. Williams, a chiropractor. (Tr. at 386.) Dr. Williams treated Claimant on June 13, July 10, and July 18, 2002. (Tr. at 383-85.) At each visit, Claimant complained of back pain. Id. Dr. Williams used various modalities of treatment, which Claimant tolerated well. Id.

State agency non-examining consultants, A. R. Gomez, M.D. and M. G. Lambrechts, M.D., reviewed the file, which erroneously indicated that Claimant's date last insured was December 31, 2001, instead of 2002. (Tr. at 337.) On September 3, 2002, Dr. Lambrechts wrote that there was insufficient evidence to assess prior to the date last insured. (Tr. at 337.) On November 8, 2002, Dr. Gomez indicated that Claimant was limited to the light exertional level, with occasional postural limitations. (Tr. at 338-39.)

Records from April, 2003 from Delbarton Foot Clinic are illegible. (Tr. at 363.)

Mental Health

On May 4, 1999, Claimant underwent a mental status examination by John B. Koch, M.A. He diagnosed mood disorder due to chronic pain. (Tr. at 282.) Claimant described her mood as "depressed because of pain." (Tr. at 280.)

On September 3, 2002, State agency non-examining consultant Rosemary Smith, Psy.D., who was also told that the date last insured was December 31, 2001, indicated that

there was insufficient evidence to diagnose a mental impairment.  (Tr. 346, 358.)  On

November 14, 2002, H.H. Clark, M.D. indicated her agreement.  (Tr. at 346.)

On April 11, 2003, Claimant was evaluated by psychologist Sheila Kelly, M.A., at the

request for Claimant's counsel.   Ms. Kelly's impression was: dependent personality

disorder, major depressive disorder, recurrent type, history of crack cocaine dependence,

in remission by self report, possible agoraphobia, and anxiety disorder, not otherwise

specified. (Tr. at 372.)  A great deal of the report recounts Claimant's experiences in the

1980s and 1990s.  (Tr. at 365-68.)  Concerning the mental status examination, Ms. Kelly

wrote:

> This is a small, average weight, white female accompanied by her son's
> girlfriend.  She is tired, worn, tearful, very depressed, and anxious.  She
> appears to be of low average intellectual functioning but is reasonably neat
> and clean with the exception of poor oral hygiene.
> Sleep and appetite are impaired, mood is depressed and anxious,
> attention is grossly impaired as is concentration, and she complains of
> chronic withdrawal and inability to leave her home.  She indicates that she
> experiences frequent suicidal ideation.
> More than anything else, this woman is dependent and passive.  She
> has been a victim all her life and remains so even now.

(Tr. at 370.)  Ms. Kelly administered the WRAT-III; Claimant scored high school level

reading and fourth grade level arithmetic.  Id.  Claimant did not complete the MMPI-2 and

Millon Clinical Multiaxial Inventory-III.  (Tr. at 371.)  She finished the Beck Depression

Inventory-II with a score which indicated severe depression.  Id.  Ms. Kelly noted that

Claimant was not receiving any psychiatric treatment and commented, "a huge part of her

psychopathology is her Dependent Personality Disorder and it is this that is going to make

her extremely difficult to treat successfully."  (Tr. at 372.)

Ms. Kelly completed a form and indicated that Claimant was "Extremely Limited"

in her abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention for extended periods, maintain regular attendance and be punctual, complete a normal work day and week without interruptions, and set realistic goals or make plans independently of others.  (Tr. at 374-75.)  Ms. Kelly opined that Claimant was "Markedly Limited" in her abilities to work in coordination to others without distraction by them and to make simple work-related decisions.  Id.  She wrote that Claimant was "Moderately Limited" in her abilities to sustain an ordinary routine without special supervision, interact appropriately with the general public, ask simple questions or request assistance, get along with coworkers or peers without unduly distracting them, maintain social appropriate behavior and adhere to basic standards of neatness and cleanliness, and respond appropriately to changes in a routine work setting.  Id.  She indicated that Claimant was "Slightly Limited" in her abilities to remember work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, and be aware of normal hazards and take appropriate precautions.  Id.

At the two administrative hearings, Claimant testified about her pain and limitations, but there was little effort to limit her testimony to calendar year 2002.  At the hearing on June 2, 2003, she testified that she could not continue babysitting in 2002 because she was "so nervous."  (Tr. at 392.)  Claimant testified that she has constant ankle pain and no balance.  (Tr. at 394.)  She takes Vicodin two times a day.  Id.  She stated that she was under the care of a family doctor, Dr. Robert Perez, for her nerves, but there are no medical records to corroborate this.  (Tr. at 395.)  Claimant further testified that she experiences mood swings, has suicidal ideation, cries a lot, and neither eats nor sleeps normally.  (Tr.

at 396.) She does "a little" grocery shopping, and her daughter does most of the housework. (Tr. at 401.) She is often uncomfortable and needs to shift positions. (Tr. at 402-04.) At the second hearing on August 15, 2005, Claimant testified that in 2002, she "pretty much stayed home." (Tr. at 547.) Her headaches in 2005 were worse than they were in 2002. (Tr. at 554.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) evaluating Claimant's credibility; (2) failing to apply 20 C.F.R. § 404.1520a; (3) relying on certain opinions and failing to have a medical advisor at the hearing; and (4) improperly analyzing the severity of her mental impairments individually or in combination. (Pl.'s Br. at 12-36.)

The Commissioner argues that (1) the ALJ properly evaluated Claimant's credibility; and (2) Claimant's mental impairment is not "severe." (Def.'s Br. at 9-14.)

Claimant's reply brief asserts that the ALJ's credibility assessment was faulty. (ECF No. 18.)

Claimant's Credibility

Claimant argues that her statements regarding her daily activities, social activities, pain and mental impairments are "remarkably consistent, detailed, frank, poignant, and believable." (Pl.'s Br. at 17.) The brief then repeats Claimant's statements at length, including material from 1998 through 2005. Id. at 17-23.

The court is obliged to focus on 2002, when Claimant was receiving very little physical health care, and no psychological health care. Basically, Claimant asserts that due to the absence of objective evidence to support her statements, the court must credit her

description of her condition and award benefits.

The second decision by the ALJ denying benefits complies with the applicable law and regulations.  The ALJ resolved doubts in her favor and found that her impairments could reasonably be expected to cause the alleged symptoms.  (Tr. at 434.)  The ALJ then proceeded with the mandated pain and credibility analysis and ultimately concluded that her pain was credible to the extent that Claimant was limited to sedentary work.  (Tr. at 435.)  The court finds that this decision is supported by substantial evidence.

Severe Mental Impairment

Claimant argues that the ALJ failed to apply the regulations when he determined that Claimant's mental impairment was not "severe."  (Pl.'s Br. at 25.)  The argument is based completely on Ms. Kelly's report on her evaluation, performed more than three months after Claimant's date last insured, for the purpose of supporting her application for benefits.  Claimant presents no other evidence of her having a mental impairment, and no evidence that she received any treatment whatsoever.  The one psychological evaluation which was prepared prior to the end of 2002 was dated May 4, 1999 (tr. at 280), and appears to have been performed with respect to another application for disability benefits which was denied.  In other words, the only evidence of Claimant's mental impairments arises directly from applications for benefits and not because of Claimant's need for treatment.

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined at 20 C.F.R. § 404.1520a (2006).  First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. § 404.1520a(b)(1).  Here,

Claimant's application fails.  Although having the burden of proof, she presented no "symptoms, signs and laboratory findings" of a mental impairment in 2002.  In 1999, Mr. Koch opined that she had a mood disorder because she was in pain.  In 2003, Ms. Kelly described Claimant as primarily presenting a Dependent Personality Disorder.  The ALJ gave "no significant weight" to Ms. Kelly's report, finding it to be inconsistent with the other evidence of record.  The court agrees and finds that the Commissioner's decision that Claimant failed to show evidence of a mental impairment which was "severe" in 2002 is supported by substantial evidence.

Opinions/Lack of Medical Advisor

Claimant asserts that the ALJ erred by relying on the opinions of non-examining state agency consultants and by failing to call a medical advisor to testify at the hearing. (Pl.'s Br. at 31.)  Claimant acknowledges that "the ALJ was handicapped and had a difficult task due to the lack of treatment during the relevant time period."  Id.  Claimant argues that testimony of a medical advisor was all the more important.

The court finds Claimant's arguments to be unconvincing.  As noted above, a claimant for disability benefits has the burden of proof.  If a claimant does not seek treatment for alleged impairments during the period in question, there is a reasonable inference to be drawn that the claimant was not in acute distress, making employment impossible.  There is so little medical evidence which is relevant to the year 2002, it is hard to imagine what testimony a medical advisor could have given which would have been helpful at the 2005 hearing.  It is within the discretion of the ALJ whether to seek the opinion of a medical advisor; the court finds that the ALJ's choice not to call an advisor was appropriate.  In addition, the court notes that Claimant's counsel made no request that the

11

ALJ obtain such testimony.

Combination of Impairments

Finally, Claimant argues that it was a critical error for the ALJ to find that her mental impairment was not "severe;" if the ALJ had so found, Claimant asserts that he would have found her to be totally disabled due to her combination of impairments.  Once again, the lack of relevant evidence for 2002 dooms these contentions.  As noted above, the ALJ's decision that Claimant's mental impairment was not "severe" was supported by substantial evidence.

After a careful consideration of the limited evidence of record which applies to the year 2002, the court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk is directed to transmit this Memorandum Opinion to all counsel of record.

ENTER: May 17, 2012

Mary E. Stanley
United States Magistrate Judge